IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLNETTE R., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 23-cv-03184 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| LELAND DUDEK, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Charlnette R. seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner")[1] denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. Specifically, Plaintiff claims that the Administrative Law Judge ("ALJ") who denied her application erred in finding that she is not disabled within the meaning of the statute. For the reasons that follow, this Court finds that the ALJ committed a legal error in his analysis of the medical opinion evidence. Thus, the ALJ's decision is reversed and the case remanded for further proceedings.

BACKGROUND

Plaintiff filed the underlying application for disability insurance benefits on April 21, 2017. (Administrative R. ("A.R.") at 15, Dkt. No. 7-1.) According to Plaintiff, she is disabled on account of her bipolar disorder, anxiety, and depression. (*Id.* at 59.) Prior to her alleged disability onset date of March 15, 2016, Plaintiff most recently worked as a collection clerk. (*Id.* at 478, 487.)

---

[1] This case was filed when Kilolo Kijakazi held the position of Acting Commissioner. Leland Dudek has been substituted as the proper Defendant pursuant to Federal Rule of Civil Procedure 25(d).

After Plaintiff's application for disability insurance benefits was initially denied on September 15, 2017, and then denied again upon reconsideration on January 8, 2018, a hearing was held before an ALJ on February 21, 2019. (*Id.* at 15.) On May 24, 2019, the ALJ issued a written decision finding that Plaintiff was not disabled prior to the date of his decision. (*Id.* at 24.) Eventually, that decision was appealed to this Court but, pursuant to an agreed motion between Plaintiff and the Commissioner, the ALJ's decision was reversed and remanded for further administrative proceedings. (*Id.* at 478, 680.) On remand, the Appeals Council directed the ALJ "to give further consideration to the medical source opinions," among other things. (*Id.* at 478; *see also id.* at 685.) Accordingly, a second hearing was held before the ALJ on September 21, 2021. (*Id.* at 478.)

In a written decision issued after the second hearing, the ALJ once again concluded that Plaintiff was not disabled prior to the date of his decision, October 20, 2021. (*Id.* at 489.) To begin, the ALJ determined that Plaintiff's bipolar disorder and anxiety constituted severe impairments. (*Id.* at 481.) Next, the ALJ concluded that none of Plaintiff's impairments met or equaled one of the listings in the agency's Listing of Impairments at 20 C.F.R. Part 404, Subpart, P, Appendix 1, so as to render her *per se* disabled. (*Id.* at 481–82.)

The ALJ then turned to Plaintiff's residual functional capacity ("RFC"). In particular, he found that Plaintiff had the RFC to perform a full range of work at all exertional levels but limited to simple, routine, repetitive tasks performed in a work environment free of fast-paced production requirements, involving only simple, work-related decisions and with few, if any, work-place changes. (*Id.* at 482.) Further, the ALJ concluded that Plaintiff should have no interaction with the public and only brief and superficial interactions with coworkers and supervisors. (*Id.*) In reaching his RFC assessment, the ALJ found persuasive the opinions of two

state agency psychological consultants who opined that Plaintiff's mental impairments caused her mild difficulties in understanding, remembering, or applying information; mild difficulties in adapting or managing herself; moderate difficulties in interacting with others; and moderate difficulties in concentrating, persisting, or maintaining pace. (*Id.* at 485.) On the other hand, the ALJ did not find persuasive the opinion of Dr. Piyush Buch, Plaintiff's treating psychiatrist, assessing her with more severe limitations. (*Id.* at 486–87.) The ALJ also noted a statement from Plaintiff's treating counselor, Raymond Coley, but found that Coley's statement did not provide any clear opinion regarding how Plaintiff's mental health conditions limited her ability to work. (*Id.* at 485.)

Although the ALJ agreed that Plaintiff was unable to perform her past relevant work, he nonetheless determined—after considering her age, education, work experience, and RFC—that Plaintiff was capable of performing work that existed in significant numbers in the national economy. (*Id.* at 487–88.) Specifically, the ALJ believed that Plaintiff would be able to perform the job of cleaner II. (*Id.* at 488.) Therefore, the ALJ concluded that Plaintiff was "not disabled." (*Id.* at 489.)

## DISCUSSION

A federal court reviews "an ALJ's disability determination deferentially." *Weatherbee v. Astrue*, 649 F.3d 565, 568 (7th Cir. 2011). Its review is confined to the rationales offered by the ALJ and the court asks only whether the decision is supported by substantial evidence. *Shauger v. Astrue*, 675 F.3d 690, 695–96 (7th Cir. 2012). "Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision." *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). The reviewing court's job is not to "reweigh the evidence or substitute [its] own judgment for that of the Commissioner." *Id.* Still, where the ALJ denies benefits, his decision must "build an accurate and logical bridge from the evidence to [his]

conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). On the other hand, remand is warranted when an ALJ's decision contains a legal error. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989).

To determine whether a claimant is disabled, the ALJ employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). That process requires the ALJ to ask, in the following order: (1) whether the claimant is not currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment; (3) whether the impairment meets the criteria of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant's RFC renders her unable to perform her past relevant work; and (5) whether the claimant's RFC, age, education, and work experience make her unable to adjust to other work existing in significant numbers in the national economy. *Id.* "A negative conclusion at any step (except for step three) precludes a finding of disability. An affirmative answer at steps one, two, or four leads to the next step. An affirmative answer at steps three or five results in a finding of disability." *Young v. Sec'y of Health & Hum. Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Here, Plaintiff asserts that the ALJ made several errors that warrant reversing his decision finding her not disabled. Most prominently, Plaintiff contends that the ALJ failed adequately to evaluate the medical opinions from her treating psychiatrist and counselor, which resulted in an RFC that failed to capture fully her functional limitations. She also argues that the ALJ's RFC assessment was flawed because it did not properly account for the ALJ's finding that she was moderately limited in her ability to concentrate, persist, and maintain pace, did not account for evidence of her history of physical and verbal altercations, and did not adequately consider her subjective complaints of limitations in activities of daily living.

The Court agrees that the ALJ committed reversible legal error in his analysis of the medical opinion evidence. Since Plaintiff's application for disability insurance benefits was filed after March 27, 2017, the ALJ was required to evaluate medical source opinions under the framework set out by 20 C.F.R. § 404.1520c. *Craig R. v. O'Malley*, No. 23 C 50035, 2024 WL 1363664, at *2 (N.D. Ill. Mar. 29, 2024). That regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources," but instead any given opinion's persuasiveness will be determined by consideration of the following factors: supportability, consistency, relationship with the claimant, specialization, and any other factors that tend to support or contradict the opinion or finding. 20 C.F.R. § 404.1520c(a), (c). The most important factors in the analysis are supportability and consistency, and therefore an ALJ must expressly discuss how he considered those factors with respect to a particular medical opinion. *Id.* § 404.1520c(b)(2). On the other hand, an ALJ may but is not required to discuss how he considered the remaining factors. *Id.* An ALJ's failure to address either the supportability or consistency factor is a legal error warranting remand. *Craig R.*, 2024 WL 1363664, at *3; *Stevens v. Kijakazi*, No. 21-CV-270-SCD, 2022 WL 1000598, at *7 (E.D. Wis. Apr. 4, 2022).

Notably, a "medical opinion" subject to § 404.1520c is a distinct form of medical evidence. *Jason M. v. Kijakazi*, No. 1:20-cv-03121-MG-SEB, 2022 WL 2071096, at *5 (S.D. Ind. June 9, 2022). Whereas "objective medical evidence" consists of "medical signs, laboratory findings, or both," a "medical opinion" is defined as:

> [A] statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .

5

> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . .; [or]
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting . . . .

20 C.F.R. § 404.1513(a)(1), (2).[2] Under that regulation, a statement constitutes a medical opinion only if it satisfies two elements: "(1) it must be a statement from a medical source about what [Plaintiff] could still do despite [her] limitations; and (2) it must express [Plaintiff's] impairment-related limitations or restrictions in terms of [her] ability to perform certain work demands." *Wallender v. Saul*, No. 20-CV-808-SCD, 2021 WL 734098, at *6 (E.D. Wis. Feb. 25, 2021). If a treatment or diagnostic statement does not qualify as a medical opinion, then the ALJ has no obligation to evaluate it under the factors set forth in 20 C.F.R. § 404.1520c. *Jason M.*, 2022 WL 2071096, at *5. Yet even evidence that might otherwise be deemed a medical opinion need not be addressed by an ALJ to the extent that it contains "[s]tatements on issues reserved to the Commissioner," such as statements that a claimant is "able to work, or able to perform regular or continuing work;" those statements are deemed "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(3)(i).

Turning to the two opinions at issue here, Plaintiff first faults the ALJ for failing to evaluate the opinion from her treating counselor, Coley, under § 404.1520c. While the ALJ noted a February 7, 2019, statement from Coley, he concluded that the statement did not clearly express an opinion as to how Plaintiff's mental impairments limited her ability to work.

---

[2] Evidence from a medical source that is neither objective medical evidence nor a medical opinion is classified as "other medical evidence," a category that includes "judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3).

6

Evidently, the ALJ implicitly concluded that Coley's statement was not a medical opinion for which he needed to conduct the § 404.1520c analysis. The Court agrees. Coley's statements were provided in response to a questionnaire. Nowhere in that questionnaire did Coley opine regarding what Plaintiff could do despite her limitations. Moreover, even as to Plaintiff's functional limitations, the ALJ correctly observed that Coley gave no definitive answers. For example, Coley was asked the following question:

> SSA may find that while [Plaintiff] has significant limitations, she could sustain work involving simple, routine tasks, without much interaction with others (such as that of a laundry worker or night janitor). Do you believe that [Plaintiff] could sustain such a job day in and day out, with accuracy, for at least 80% of an 8-hour workday, without interruptions from her symptoms during the period beginning March 2016? Please explain, including the symptoms you believe would interfere.

(A.R. at 456.) Coley responded "[d]epression, lack of motivation, fatigue[,] low to no energy, diminished ability to think or concentrate[,] indecisiveness." (*Id.*) Even though the question itself called for a "yes" or "no" response about Plaintiff's functional limitations, Coley only provided a list of symptoms without specifically identifying how those symptoms limited Plaintiff. Moreover, the question is phrased so it essentially asks whether Plaintiff is able to perform regular work, and thus even if Coley had given a clear negative answer, his statement would risk commenting on a matter reserved for the Commissioner such that it could be disregarded under 20 C.F.R. § 404.1520b(c)(3).

With respect to the statements from Plaintiff's psychiatrist, Dr. Buch, there is no dispute that they qualify as medical opinions. Those medical opinions were provided in two separate documents, both prepared by Dr. Buch on February 14, 2019. First, Dr. Buch filled out a mental impairment questionnaire. He indicated that Plaintiff had marked limitations in the following abilities: working in coordination with or proximity to others without being unduly distracted by them; completing a normal workday and workweek without interruptions from psychologically

7

based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; and getting along with co-workers or peers without unduly distracting them or exhibiting behavior extremes. (A.R. at 459.) Further, Dr. Buch noted that Plaintiff was moderately limited in her ability to remember locations and work-life procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; ask simple questions or request assistance; and respond appropriately to changes in routine work setting. (*Id.*) Dr. Buch also anticipated that Plaintiff's impairments would cause her to be absent from work more than three times a month and believed that her symptoms would interfere with her ability to summon the attention and concentration necessary to perform simple work for more than 21% of a typical workday. (*Id.* at 459–60.) In a separate document, Dr. Buch elaborated on Plaintiff's impairments and functioning. (*Id.* at 463–65.)

Because Dr. Buch provided medical opinions, the ALJ was required at least to consider and discuss those opinions' supportability and consistency. With respect to the supportability factor, § 404.1520c explains that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Likewise, for consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

8

According to Plaintiff, the ALJ erred by discounting Dr. Buch's opinion as to the severity of her limitations without sufficiently addressing the supportability and consistency factors. The Court agrees. In finding Dr. Buch's opinions unpersuasive, the ALJ's only analysis consists of the following:

> As discussed above, the evidence of record shows that [Plaintiff] continues to report having mental impairment related symptoms. However, the medical evidence of record does not establish objective findings consistent with such severe limitations as noted by Dr. Buch. Both [Plaintiff's] treating psychiatrist and treating counselor have indicated that she is responding to treatment and has had a positive response to medication. The recent neuropsychological examination also repeatedly noted malingering and poor effort on the tests that were administered.

(A.R. at 486 (citations omitted).) In finding that the record evidence was not consistent with the limitations assessed by Dr. Buch, the ALJ touches on the consistency factor. Yet there is no explicit discussion of the supportability factor.

Construed generously, the ALJ could be viewed as discussing a supportability issue with his observation that Plaintiff's treating psychiatrist (*i.e.*, Dr. Buch) reported that she had some positive response to treatment. But, as Plaintiff is quick to point out, while Dr. Buch noted that "Plaintiff's response to the medications has been positive," he made that comment in a form that he filled out on the same day that he completed the questionnaire assessing Plaintiff with numerous marked and moderate work-related limitations. (*Id.* at 463; *see also id.* at 460, 465 (listing the dates that each medical-opinion document was completed by Dr. Buch).) Thus, the ALJ appears to take the view that the supportability of Dr. Buch's opinion regarding the severity of Plaintiff's limitations is undermined, at least in part, by Dr. Buch's contemporaneous report of some improvement in Plaintiff's condition. However, there can be a great difference between "a patient who responds to treatment and one who is able to enter the workforce. 'Improvement' by itself does not demonstrate a lack of disabling symptoms." *Seruya v. Berryhill*, No. 16 C 10896,

9

2017 WL 4650886, at *5 (N.D. Ill. Oct. 17, 2017) (citation omitted). That Dr. Buch opined on Plaintiff's significant limitations the same day that he noted her positive response to medication shows that he did not believe Plaintiff improved to a degree that made her able to work. Indeed, notwithstanding Plaintiff's positive response to medication, Dr. Buch went on to note that "there have been setbacks" and Plaintiff's "emotions can be all over the place." (A.R. at 463.) It was improper for the ALJ to cherry-pick Dr. Buch's stray remark about some unspecified improvement to undermine the remainder of Dr. Buch's opinions regarding Plaintiff's functional limitations. *See Seruya*, 2017 WL 4650886, at *4 (finding that the ALJ engaged in improper "cherry-picking" by "citing only to treatment notes which reflected improvement or stability" and ignoring contradictory evidence of the claimant's persisting symptoms).

The ALJ's opinion otherwise is silent as to the supportability of Dr. Buch's opinions. He did not even engage with the elaborations that Dr. Buch provided in either the mental-impairment questionnaire or the other form he executed the same day. Nor did the ALJ address if or how his consideration of the objective medical evidence—namely, the copious treatment notes from Dr. Buch in the record (*e.g.*, A.R. at 279–323, 393–408)—led him to discount Dr. Buch's opinions as unsupported. Before this Court, the Commissioner points to the ALJ's summary of the record evidence earlier in his opinion, "but a summary is not a substitute for analysis." *Craig R.*, 2024 WL 1363664, at *3; *see also Rebecca M.B. v. Kijakazi,* No. 22 C 41, 2023 WL 3168894, at*4 (N.D. Ill. Apr. 28, 2023) ("While the Court reads the ALJ's opinion as a whole, and ALJs need only minimally articulate their analysis, it does not mean that ALJs can recite the cold medical record upfront, and then make conclusions without analysis later in the opinion."). Even those summaries merely note both normal and abnormal mental status examinations. The existence of normal mental examinations does not necessarily detract from the supportability of

10

Dr. Buch's opinions of Plaintiff's limitations because "mental illness often fluctuates." *Seruya*, 2017 WL 4650886, at *4. That is especially true given that one of Plaintiff's severe impairments is bipolar disorder. "The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

Standing alone, the ALJ's silence on the supportability of Dr. Buch's opinions is a reversible error. Nonetheless, the Court also concludes that his flawed analysis of the consistency factor provides a separate grounds for reversal. In finding Dr. Buch's opined limitations inconsistent with the record evidence from other medical sources, the ALJ focused on Coley's observation of Plaintiff's positive response to treatment and her performance on a neuropsychological examination that strongly suggested that Plaintiff was malingering. As to Coley's opinion that Plaintiff was "responding slowly to treatment" (A.R. at 455), that observation of some improvement shares the same flaws as discussed above with respect to Dr. Buch's similar comment.

On the other hand, the ALJ was entitled to take into account the evidence of malingering. At the same time, the only evidence of malingering came from a single April 26, 2021, neuropsychological evaluation summarizing the results of two sessions in which Plaintiff took a battery of neuropsychological tests. (A.R. at 1034–54.) The ALJ needed to explain why this evidence of malingering was more consistent with the overall record than Dr. Buch's opinions. Yet the ALJ makes no attempt to evaluate the malingering evidence in the context of the overall record; if there is evidence that Plaintiff's malingering was not an isolated event but part of a pattern, the ALJ does not identify it. *See, e.g.*, *Swift v. Berryhill*, No. 17 CV 50051, 2018 WL

11

2161967, at *4 (N.D. Ill. May 10, 2018) (explaining that because an accusation of malingering is "a harsh judgment and one that carries the potential to dominate all other arguments like the proverbial skunk thrown in the jury box," an ALJ should analyze such an opinion "with a more critical eye before accepting it" (internal quotation marks omitted)). And Plaintiff had ongoing treatment relationships with both a psychiatrist and a counselor, neither of whom ever expressed concern that Plaintiff was feigning her symptoms.

Further, the ALJ's discussion of the consistency factor excessively focused on the limited evidence undermining Dr. Buch's opinions while giving short shrift to the remaining evidence in the record. "[A]lthough the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (internal quotation marks omitted). Even the ALJ's summary of the medical record tends to downplay the objective medical evidence supporting Dr. Buch's opinions regarding Plaintiff's functional limitations. The ALJ states in a single sentence that "[w]hile the mental status examinations not[e] some limited insight, disorganized thought process, and pressured speech at times, [Plaintiff] is also noted to have appropriate insight with normal speech and organized thought process at other times." (A.R. at 483.) By contrast, the initial, subsequently reversed decision following Plaintiff's first hearing contained a far more fulsome summary of the objective evidence. That ALJ detailed examinations finding that Plaintiff had "agitated or retarded motor activity, pressured or impoverished speech, labile affect, angry mood, irrational and/or obsessive thought process, and/or impaired judgment and insight," had "reported depression, anxiety, irritability, [and] panic attacks," and gave "answers to questions evaluating her remote memory, insight and

12

abstract thinking, similarities and differences, judgment, calculations, and general information [that] were mostly incorrect or non-responsive." (*Id.* at 20–21.)

Notably, following the reversal and remand of the first ALJ's decision, the Appeals Council indicated that the reversed decision did not sufficiently explain its reasoning for discounting Dr. Buch's opinions. Specifically, the Appeals Council faulted the first ALJ for neglecting to "explain why, when assessing [Dr. Buch's] opinions, he credited instances of normal mental status examinations over instances when providers observed more severe symptoms." (*Id.* at 683.) Rather than heeding the Appeals Council's instruction, the ALJ's decision on remand pays even less attention to that objective medical evidence and overemphasizes the evidence of malingering and improvement evidence. The ALJ cannot discount Dr. Buch's opinions as inconsistent with the record as a whole when he mischaracterizes the record against which those opinions are compared.

By failing to discuss supportability and providing an inadequate analysis of consistency as required by 20 C.F.R. § 404.1520c, the ALJ committed reversible legal errors. Still, "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the [ALJ's] original opinion failed to marshal that support, then remanding is a waste of time." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). However, "[t]he mere possibility that an ALJ might reach the same conclusion is not enough to establish harmless error." *Craig R.*, 2024 WL 1363664, at *4. The Court cannot say with great confidence that Plaintiff would again be found not disabled even if Dr. Buch's opinions were properly evaluated under the framework of § 404.1520c. Given that the Appeals Council expressly instructed the ALJ on the first remand to further evaluate Dr. Buch's opinions, it evidently believed that his opinions could be dispositive as well. And the

13

second ALJ's failure to sufficiently conduct the analysis prescribed by the Appeals Council by itself supports remand.

Having found that the ALJ's insufficient analysis of Dr. Buch's opinions constitutes a reversible error requiring remand, the Court need not address Plaintiff's remaining contentions as to how the ALJ erred. In any case, those other alleged errors are all downstream of the ALJ's RFC assessment that was impacted by his flawed evaluation of Dr. Buch's medical opinions. Thus, the Court expects that each of those issues will be revisited and considered anew on remand.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision denying Plaintiff's application for disability insurance benefits is reversed and the case remanded for further proceedings consistent with this opinion.[3] The Clerk is directed to enter Judgment in favor of Plaintiff. Civil case terminated.

ENTERED:

Dated: March 27, 2025

Andrea R. Wood
United States District Judge

---

[3] Pursuant to Rule 5 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g), it is no longer necessary for parties to style requests for relief as motions for summary judgment. Accordingly, the Commissioner's motion for summary judgment (Dkt. No. 18) is terminated as moot.